UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| SK NOLANA, LLC § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. ____ |
| § | |
| BLACKBOARD INSURANCE § | |
| COMPANY § | |
| § | |
| **Defendant.** § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff, SK Nolana, LLC by and through its attorneys of record, and files this petition for damages caused by Defendant Blackboard Insurance Company (hereinafter referred to as "Defendant"). In support of such claims and causes of action, Plaintiff would respectfully show this Honorable Court as follows:

### INTRODUCTION

1. Plaintiff's Property sustained severe and increasing loss as a result of a covered weather-related event, namely Hurricane Hanna which caused significant property damage. In the aftermath, Plaintiff relied on its insurance company to help it recover and rebuild, as per the terms of insurance Policy Number BIGFSHAK00001HIBP-31431-01. *See Exhibit 1*. However, contrary to Defendant's representations to Plaintiff, Defendant improperly adjusted Plaintiff's claim, bearing number ATUN-7404A9. Plaintiff, therefore, did not receive the coverage it purchased from Defendant and is now required to take legal action to ensure it gets the coverage owed to it.

1

## PARTIES

2. Plaintiff, SK Nolan, LLC is a Limited Liability Company comprising of the following member and Director, Shakeel Khatri, an individual residing at 3609 Dolci Lane, Richmond, Texas 77406.

3. Plaintiff owns the subject property located at 131 West Nolana Avenue, McAllen, Texas, 78504 (the "Property").

4. Defendant, Blackboard Insurance Company's registered address is 1271 Avenue of The Americas Floor 37, New York, NY 10020-1303. Defendant may be served with process by serving its registered agent for service, Corporation Service Company located at 211 E 7th St. Suite 620, Austin, Texas, 78701-3218.

## JURISDICTION AND VENUE

5. The Court has jurisdiction over this action pursuant to 28 U.S.C. §§1332(a)(1) because of the diversity of citizenship of the parties and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## FACTUAL BACKGROUND

7. Defendant is an insurance provider, selling insurance policies and related coverage within the State of Texas. Plaintiff purchased a Policy of insurance from Defendant which was in effect when the underlying covered event occurred.

8. Plaintiff and Defendant entered into an insurance agreement governed by the terms of the insurance policy bearing number BIGFSHAK00001HIBP-31431-01, wherein Defendant, in exchange for a yearly premium, agreed to cover any and all expenses incurred by Plaintiff in the course of restoring its Property, from damages that were not excluded in the insurance agreement.

9. On or about June 25, 2020, Plaintiff's Property sustained severe and increasing loss as a result of a covered weather-related event namely, Hurricane Hanna. The Hurricane caused wide-scale damage to Plaintiff's Property, including but not limited to the roof and the decorative walls of the Property.

10. Plaintiff contacted Defendant shortly after the event of the damage to Plaintiff's Property and was assigned claim bearing number ATUN-7404A9. Defendant retained the services of Sedgwick, a third-party claims administrator, to assist it with the claim-handling process.

11. On October 2, 2021, Plaintiff retained the services of Premier Claims, LLC, to assist it with the claim handling process. Subsequently, Premier Claims, LLC promptly notified Defendant of its appointment.

12. On or around October 13, 2021, Sedgwick acknowledged the appointment of Premier Claims, LLC. Sedgwick also assigned Plaintiff's claim to Mr. Greg Niedbala to handle the claim resolution process on its behalf.

13. On or around October 14, 2021, Plaintiff retained the services of Restore Masters, LLC to conduct the necessary inspection and assess the damage caused to the property. Mr. Julian Burnett on behalf of Restore Masters, LLC inspected the property and issued an estimate in the amount of $1,003,762.90 on October 29, 2021.

14. On or around October 26, 2021, Jay Adame on behalf of Sedgwick inspected the subject Property to assess the damage. It is pertinent to note that, after the said inspection, no estimates were issued by Sedgwick.

15. On or around October 28, 2021, Sedgwick appointed Scout Forensics, LLC to assess the damage caused to the Property. Scout Forensics, LLC in its report dated November 3, 2021, concluded that "*there was damage to the decorative walls and modified bitumen roof membrane as a result of Hurricane Hanna, consistent with occurring on July 25, 2020*".

16. On or about November 4, 2021, Sedgwick requested Plaintiff provide a recorded statement and sign a Non-Waiver Agreement with Defendant. Plaintiff duly obliged and provided the same.

17. On December 1, 2021, Plaintiff signed a Non-Waiver Agreement as per the request of Defendant. Plaintiff thereby always cooperated with Defendant for timely resolution of the claim.

18. Despite repeated requests from Premier Claims, LLC, the estimates in furtherance to the inspection made on October 26, 2021, were not issued by Sedgwick. Finally, on or around December 14, 2021, Sedgwick issued a grossly undervalued estimate in the amount of $11,456.97.

19. After nearly 2 months from the date of inspection, Sedgwick issued a severely undervalued estimate after repeated requests from Plaintiff. Plaintiff was kept in the dark during this period and was subjected to severe hardships as a consequence of the delay. This delay further reflects the conduct of the insurance carrier in handling Plaintiff's claim.

20. On January 18, 2022, Sedgwick issued a grossly undervalued check in the amount of $11,456.97. The issued check amounts are severely deficient and inadequate to perform any repairs and restore the Property.

21. On February 4, 2022, Premier Claims, LLC in its letter to Defendant explained in detail the deficiency of the estimates and applicable building codes in line with the International Existing Building Code, 2018. The building codes are of paramount importance as they lay down guidelines for repairs along with the materials required to restore the Property. Premier Claims, LLC also referred to Scout Forensics, LLC's report and sought clarification of the decision not to adopt applicable regulations to restore the property.

22. On or around March 10, 2022, Scout Forensics, LLC in its supplemental engineering report erroneously concluded that "*The work required to rectify the identified hurricane-related roofing damage may be conducted utilizing like materials and, as such, no code upgrades are required*".

23. On March 15, 2022, Sedgwick promptly notified that no code upgrades are needed in relation to the damage sustained by Plaintiff's Property. Despite the clear discrepancy in the codes adopted by Sedgwick, Sedgwick decided to turn a blind eye to the information submitted by Plaintiff.

24. On April 5, 2022, Restore Masters, LLC conducted a necessary inspection on the damaged Property and issued a comprehensive report detailing the extent of the damage on the roof and other areas of the subject Property. On the same day, Restore Masters further issued an estimate in the amount of $287,688.84.

25. On or around April 29, 2022, Premier Claims, LLC once again inspected the property and noticed damage to several other areas in addition to the already surveyed areas of the Property. Subsequently, it issued an estimate in the amount of $307,514.57 to conduct necessary repairs and restore the property as per the applicable building codes.

26. Since then, there has been no response from Defendant. The insurance carrier failed to explain and substantiate the reasons for its denial of payments to Plaintiff.

27. Plaintiff made a timely and complete claim and cooperated in every aspect of the same, yet this claim has been unfairly adjusted and delayed for an excessive period of time. This delay has now compounded the loss at the Property, all of which stands in stark contrast to the representations made by Defendant to Plaintiff when the latter purchased the policy. Such conduct exposes Defendant to certain causes of action under Texas law.

28. Defendant grossly undervalued Plaintiff's Property claim by underestimating the value of the damages during its investigation. Defendant's adjusters prepared an estimate of damages that is deficient based on the improper and inadequate investigation and analysis of the damages to Plaintiff's Property resulting from the covered loss.

29. Defendant failed to make timely payment of damages based on the improper and inadequate investigations and analysis of its representatives. Despite Defendant's failure to properly adjust the claim, the Policy unambiguously insures the covered loss and resulting damages.

30. As a result of Defendant's failure to adequately investigate Plaintiff's covered loss and failure to pay for all of the damages as required by its own insurance Policy, Plaintiff is unable to repair all of Plaintiff's Property.

31. As a result of Defendant's failure to properly adjust the claim, and its refusal to pay for the true value of the covered loss to the Property, Plaintiff is left with no choice but to hire its own professionals, incurring costs and expenses associated with proper evaluation and investigation of Plaintiff's covered loss.

32. The significant effect of Defendant's wrongful and unjustified delays and refusal to tender due and owing Policy proceeds and benefits is that Plaintiff detrimentally relied upon the contract of insurance it entered into with Defendant and remains without the benefit of the bargain.

33. As a result of Defendant's failure to honor its obligations and duties under the Policy, Plaintiff is forced to retain the services of legal counsel to protect its rights and remedies under the Policy and as an insured.

34. As of this date, Plaintiff has met and complied with all conditions precedent and duties under the subject insurance Policy, and all such conditions and duties have been waived by Defendant.

## **CLAIMS AGAINST DEFENDANT**

35. All acts by Defendant were undertaken and completed by its officers, agents, servants, employees, or representatives. Such was done with Defendant's full authorization or ratification and was completed in the normal and routine course and scope of employment of Defendant.

## **BREACH OF CONTRACT**

36. Plaintiff entered into a valid and enforceable written insurance contract with Defendant pursuant to the laws of Texas and hereby incorporate by reference the allegations of paragraphs 1 through 35 above as though fully stated herein.

37. Defendant sold, in exchange for valuable consideration, the Policy, whereby Defendant agreed to insure, inter alia, the Property owned by Plaintiff.

38. Plaintiff fulfilled all of its obligations under the Policy, including the payment of certain premiums to secure insurance on its dwelling and personal property.

39. Defendant's refusal to pay for the full value of the damages to the Property constitutes a breach of contract.

40. Due to Defendant's breach of the Policy, Plaintiff suffered damages by way of unpaid insurance proceeds and benefits, has been forced to retain counsel, and further had been damaged by a sum to be determined at trial and final judgment.

41. Plaintiff's damages include, without limitation, actual damages, interest, and consequential damages, including without limitation, attorneys' fees, costs, resulting damages from required remediation, and other foreseeable costs and expenses as a result of Defendant's breach of contract.

42. The contract outlined obligations to be performed by both Plaintiff and Defendant, including but not limited to, Plaintiff paying policy premiums for its insurance coverage, and Defendant then providing said coverage for claims in the event of covered damage.

43. Plaintiff fully performed its contractual obligations by making policy premium payments and timely reporting of covered losses upon discovery, as required by the insurance contract with Defendant.

44. In direct contrast, Defendant materially breached the contract by failing to provide adequate coverage following the underlying claim filed by Plaintiff. Moreover, despite filing a

claim which notified Defendant of this loss, Plaintiff is yet to receive full compensation for its covered damages as required by the insurance contract it purchased.

45. In addition to the above, Plaintiff has previously given notice pursuant to Chapter 38.001 of the Civil Practice and Remedies Code, that it will seek all available attorney's fees, costs of court, penalties, and any additional remedies recoverable under Texas law.

## **BREACH OF THE COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING**

46. Plaintiff hereby incorporates by reference of all the allegations of paragraphs 1 through 45 above as though fully stated herein.

47. There is an implied covenant of good faith and fair dealing in the insurance contract between Defendant and Plaintiff.

48. Defendant had no reasonable basis for denying the benefits of the insurance Policy, and Defendant knew of or recklessly disregarded, the lack of a reasonable basis.

49. Defendant reckless indifference to the facts or to the law can be inferred and imputed from its actions; specifically, Defendant unreasonably ignored Plaintiff's arguments and facts favoring replacement or repair of the damaged roof and other areas of the subject property.

50. Defendant had, in violation of the covenant of good faith and fair dealing, hindered the timely resolution of Plaintiff's insurance claim.

51. Instead of working through the differences in the claim with Plaintiff or its licensed adjuster, Defendant chose to go out and find someone else who would undervalue the damages in order to support Defendant's refusal to pay the full value of the damages to the Property.

52. Defendant knows or had reason to know that it does not have a reasonable basis for denying payment of Plaintiff's covered loss under the Policy.

53. Defendant's reckless indifference to the facts, evidence, and proof submitted by Plaintiff amount to a breach of Defendant's fiduciary responsibility for good faith and fair dealing with Plaintiff, the insured.

54. As a direct and proximate result of Defendant's bad faith and/or its unfair settlement practices, Plaintiff suffered compensatory damages, consequential damages, pre-and post-judgment interest, attorneys' fees, engineer's fees, costs, and expenses.

## **VIOLATIONS OF CHAPTER 542 OF THE TEXAS INSURANCE CODE**

55. Plaintiff incorporates by reference all facts and circumstances set forth within the above paragraphs.

56. Defendant's actions constitute certain violations of Chapter 542 of the Texas Insurance Code, as Plaintiff remains unpaid since the underlying event occurred.

57. Specifically, Defendant had violated Section 542.058 of Chapter 542 of the Texas Insurance Code, in failing to adhere to the statutorily prescribed deadlines in the handling, adjustment, and payment of insurance claims. Defendant possessed all the necessary information to pay this claim for more than a year which is objectively deficient.

58. As a result of the above-referenced violations and acts committed by Defendant, and in accordance with Section 542.060 of the Texas Insurance Code, Defendant is liable to pay Plaintiff, in addition to the amount of the claim, simple interest on said amount as damages. The same is to be calculated each year, at the rate determined on the date of the judgment under governing Texas law. Plaintiff has further entitled to prejudgment interest on the amount of the claim, as provided by law. Interest is awarded under this subsection as damages accrue beginning on the date the claim was required to be paid.

59. As a result of Defendant's Texas Insurance Code violations, Plaintiff is also been forced to retain the legal services of the undersigned attorneys to protect and pursue the present claims on

his behalf. Accordingly, Plaintiff also seeks to recover its court costs, reasonable and necessary attorneys' fees as permitted under governing Texas law, as well as any other such damages to which Plaintiff may be justly entitled.

## DAMAGES

60. Defendant's conduct has been the producing or proximate cause of damage to Plaintiff, and Plaintiff, therefore, seeks an amount in excess of the minimum jurisdictional limits of this Court.

61. Plaintiff is clearly entitled to statutory penalty interest damages, attorney's fees, and cost of court, as allowed under Section 542 of the Texas Insurance Code.

## JURY DEMAND

62. Plaintiff submits that Jury Trial has been requested and any requisite fee has been tendered for a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that be awarded actual damages are not in excess of the minimum jurisdictional limits of this Court, pre-and post-judgment interest as allowed by law, costs of suit, all such additional relief specified within this Original Petition, and for all such other relief, at law or in equity, to which Plaintiff may be justly entitled.

Respectfully submitted,


*/s/ Jacob S. Langley*
Jacob S. Langley
Southern District Bar No. 3803558
Zerbe, Miller, Fingeret, Frank & Jadav, LLP
3009 Post Oak Blvd., Suite 1700
Houston, Texas 77056
Telephone: (713) 350-3523
Fax: (713) 350-3607
jlangley@zmflaw.com


**ATTORNEY FOR PLAINTIFF**